USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/25/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

LEE XU and STEPHEN M. SZYMANSKI,     :          22-CV-5090 (VEC)

                              :

                  Plaintiffs,    :         OPINION AND ORDER

        -against-                :

                              :

DIREXION SHARES ETF TRUST; RAFFERTY  :
ASSET MANAGEMENT, LLC; DIREXION       :
FAMILY OF INVESTMENT COMPANIES;     :
DANIEL O'NEILL; DANIEL J. BYRNE; GERALD :
E. SHANLEY, III; JACOB C. GAFFEY; PATRICK :
J. RUDNICK; ANGELA BRICKL; TODD        :
KELLERMAN; PAUL BRIGANDI; TONY NG;   :
MICHAEL RAFFERTY; KATHLEEN RAFFERTY :
HAY; U.S. BANCORP FUND SERVICES, LLC;   :
FORESIDE FUND SERVICES, LLC; and       :
DIREXION ADVISORS, LLC,              :

                              :

                Defendants.    :

------------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

        The Plaintiffs in this case invested in Exchange-Traded Funds ("ETFs") that were fully disclosed to be exceedingly risky investments. They lost a lot of money and want to hold Defendants responsible for their losses. That is not how the securities laws of this country work. For the reasons discussed below, Defendants' motion to dismiss (Dkt. 118) is GRANTED. The Complaint is dismissed with prejudice and without leave to amend.

# BACKGROUND[1]

Plaintiffs Lee Xu ("Xu") and Stephen Szymanski ("Szymanski") accuse Defendants of committing numerous Securities Act and Exchange Act violations, including by, *inter alia*, misleading investors about the risk of loss associated with long-term holdings and intra-day trades and by manipulating share prices.  *See generally* Third Amended Compl., Dkt. 110 ("TAC").[2]

## I.   The Funds

Plaintiffs bring this action to recover losses sustained from their investments in certain ETFs.  *See* TAC ¶¶ 1–2; *id.* at pp. 79–82.  An ETF is a pooled investment product with publicly-listed shares that trade on a national securities exchange.  The ETFs at issue here are "index-based ETFs" that seek generally to "track the performance, or a multiple or inverse of the performance, of an underlying benchmark or index" by investing in a portfolio of securities or

---

[1]     As always, the Court accepts all well-pled, non-conclusory factual allegations as true and draws all reasonable inferences in the light most favorable to Plaintiffs.  *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).  That said, the TAC is comprised almost entirely of a mix of conclusory allegations and allegations that are nonsensical (sometimes because of typographical errors, sometimes because they just make no sense).  *See, e.g.*, TAC ¶ 13 ("Direxion made this by hidden mathematical defects in the design, and mostly to make the shorting profit faster and bigger, by short-term, middle-term, and long-term price manipulation."); *id.* at p. 30, ¶ 158 ("This statement was still partially made, hiding that the intraday price is not just slightly different but fundamentally impossible to leverage the intraday prices."); *id.* at p. 49, ¶ 260 ("Given the leverage and volume of the Funds, it is hard to say that the defendants have never joined the short-term swing trade through third-party affiliates, individually, or by any other means.").

[2]     On June 16, 2022, Plaintiff Lee Xu, who is an attorney admitted to practice in this court, filed this case as a putative class action pursuant to the Private Securities Litigation Reform Act ("PSLRA") on behalf of himself and others similarly situated.  *See* Compl., Dkt. 1.  On July 29, 2022, Defendants moved to disqualify Mr. Xu as class counsel, *see* Dkt. 82, which Mr. Xu opposed, Dkt. 89.  Prior to the Court acting on Defendants' motion (but after the deadline to amend the Complaint as of right had expired, Fed. R. Civ. P. 15(a)(1)), on September 1, 2022, Mr. Xu filed an amended complaint without leave of Court.  *See* Dkt. 95.  The parties subsequently stipulated to permit Mr. Xu to amend the complaint to drop the class allegations and to a briefing schedule for Defendants' anticipated motion to dismiss.  *See* Dkt. 103.  Rather than oppose the motion, as contemplated by the parties' stipulation, Mr. Xu instead filed the TAC, again without leave of Court, to add Mr. Szymanski as a named party.  *See* Dkt. 110. Ultimately, the Court granted leave to file the TAC *nunc pro tunc*.  Dkt. 113.  Mr. Xu subsequently filed two additional motions to amend the TAC in attempts to revive his class claims, Dkts. 116, 122, both of which were denied, Dkt. 133.

other assets, including swap agreements, futures contracts, and short positions.  Def. Mem. at 6, Dkt. 119; *see also* TAC ¶ 3.

The four funds at issue are the: Direxion Daily Gold Miners Index Bull 2X Shares ("NUGT"); Direxion Daily Junior Gold Miners Index Bull 2X Shares ("JNUG"); Direxion Daily Gold Miners Index Bear 2X Shares ("DUST"); and Direxion Daily Junior Gold Miners Index Bear 2X Shares ("JDST," and together with NUGT, JNUG, and DUST, the "Funds").  TAC ¶¶ 1, 3; Def. Mem. at 4.  Each Fund is a "leveraged" ETF that seeks to deliver a multiple of the daily performance (*e.g.*, 2X or -2X) of their underlying benchmark indices.  TAC ¶¶ 5, 7; Def. Mem. at 6.  While the NUGT and JNUG Funds seek to match a multiple of the daily performance (2X) of their underlying benchmark indices (hence the name "Bull Shares"), the DUST and JDST Funds seek to match the opposite of the daily performance (-2X) of their underlying benchmark indices (also referred to as the "Bear Shares").  Def. Mem. at 6–7; TAC ¶¶ 5, 7–8.  Accordingly, the Funds "are offered as pairs of funds: Bull and Bear, to track a directional leveraged or inverse leveraged price performance of an index."  TAC ¶ 5.[3]

Shares of the Funds are listed on the NYSE Arca, Inc., a national stock exchange on which index funds and other securities are traded; although traded like equity shares, "most investors will buy and sell Shares of the Fund[s] in the secondary market through brokers."  TAC ¶ 4; *see also* Def. Mem. at 7–8.  Investors typically "buy and sell ETF shares on the secondary market through Authorized Participants or other intermediaries throughout the trading day at market prices that vary based on the forces of supply, demand, and other economic or regulatory

---

[3]       "While NUGT 'seeks daily investment results, before fees and expenses, of 200% of the daily performance of the Index,' . . . DUST 'seeks daily investment results, before fees and expenses, of 200% of the inverse (or opposite) of the daily performance of the Index.'"  Def. Mem. at 6–7 (quoting Roy Decl. Ex. 9 at 91, Dkt. 120-9, the February 28, 2020 "Prospectus," as supplemented April 1, 2020).  Similarly, JNUG and JDST "are leveraged in opposite directions," seeking 200% and -200% of their daily Index performance, respectively.  *Id.* at 7; Ex. 9 at 57, 66.

factors." Def. Mem. at 8; *see also* TAC ¶ 4.  The ETF shares are typically issued to the secondary marked in large blocks called "Creation Units."  TAC ¶ 4.

## II.    The Parties

Plaintiff Lee Xu, a self-described day-trader, "invested about $1,050,000.00" by day trading in the four Funds through his TD Ameritrade brokerage account, $150,000 by day-trading in the four Funds through his Interactive Brokers account, and, through Charles Schwab, incurred a total loss of $89,103.17 on what appear to have been four separate purchase (and subsequent sales) transactions in March and April, 2017, April 2020, and June 2022 in NUGT and JNUG.  *See* TAC at p. 80.[4]  Plaintiff Stephen Szymanski purchased only shares of JNUG; those purchases occurred on April 25, 2017, and July 4, 2017.  *Id.* at pp. 81–82.[5]

Defendant Direxion Shares ETF Trust (the "Trust") is a Delaware statutory trust and an SEC-registered investment company that issues shares of the Funds.  *Id.* ¶ 29; Def. Mem. at 4. The Trust is one of several registered investment companies that comprise Defendant Direxion Family of Investment Companies (the "Direxion Family").[6]  *See* TAC ¶ 31; Def. Mem. at 5.  In addition to the Trust, Plaintiffs have sued: Direxion Advisors, LLC ("Direxion Advisors"), an investment adviser to certain series of the Funds (that are not at issue here); Rafferty Asset Management, LLC ("Rafferty LLC"), the investment advisor for the Funds and sole member of

---

[4]     The chart at page 80 of the TAC, pursuant to which Mr. Xu certifies to his holdings, is incomprehensible. The chart does not disclose when he began or stopped day-trading these Funds in his TD Ameritrade or Interactive Brokers accounts.  It is also unclear when he purchased the shares of NUGT and JNUG held in his Schwab account that were subject to a reverse split.

[5]     Mr. Szymanski's certification raises several questions.  For one thing, the market would have been closed on July 4, a national holiday.  *See* Def. Mem. at 8.  The entry for the purported loss on the alleged July 4 purchase states: "1, 12."  The Court has no idea what that means.  Second, although he reports a loss of $568,193.77 on the April 25, 2017, purchase, he does not disclose when those shares were sold (and the loss incurred).

[6]     Other investment companies that make up the Direxion Family are not parties to this action.  Def. Mem. at 5.

Direxion Advisors; U.S. Bancorp Fund Services, LLC ("USBFS"), the Funds' administrator; and

Foreside Fund Services, LLC ("Foreside"), the "distributor" through which the Trust offers

shares of the Funds for sale.  TAC ¶¶ 30, 45–47.  The TAC refers to Direxion Advisors,

Foreside, USBFS, and the Direxion Family as the "Affiliate Companies."  *Id.* ¶ 49.  The TAC

also names a number of individuals,[7] all of whom have some role in the Trust or in one of the

corporate Defendants.

### III.    The Complaint[8]

Plaintiff Xu alleges that he purchased JNUG and NUGT shares on March 31, 2017, and

sold them on April 30, 2017.  *See* TAC at pp. 79–80.  Mr. Xu may have purchased additional

shares on April 23, 2020, when, apparently, there was a reverse split of the shares; he sold those

---

[7]    The individual Defendants are: Daniel O'Neill (managing director of Rafferty LLC and President and a
Trustee of the Trust); Daniel J. Byrne (Trustee); Gerald E. Shanley III (Trustee); Jacob C. Gaffey (Trustee); Patrick
J. Rudnick (Principal Executive and Financial Officer of the Trust, and Senior Vice President of Rafferty LLC);
Angela Brickl (Chief Compliance Officer of the Trust and General Counsel of Rafferty LLC); Todd Kellerman
(Treasurer and Controller of the Trust); Paul Brigandi (management and oversight of the Funds); Tony Ng (same);
and Michael Rafferty and Kathleen Rafferty Hay (alleged controlling members of Rafferty LLC).  TAC ¶¶ 30, 32–
42.

       The TAC refers to Defendants O'Neill, Kellerman, Byrne, Shanley, Gaffey, and Rudnick as the "Individual
Controlling Defendants," *id.* ¶ 38, and to Defendants Brickl, Kellerman, Rafferty Hay, and Rafferty as the
"Individual Managerial Defendants," *id.* ¶ 43.  O'Neill, Rafferty, Rafferty Hay, Brigandi, and Ng constitute a subset
of Individual Defendants called the "Portfolio Managers."  *Id.* ¶ 48.  According to Plaintiffs, those Defendants are
"the high managerial agent [sic] of the Trust or management company or affiliates . . . who designed the fraudulent
scheme, ratified, recklessly disregarded, or directly managed or committed the price control or market
manipulation."  *Id.*

[8]    At page 13 of the TAC, the numbered paragraphs inexplicably jump from paragraph 56 to paragraph 71.
The TAC is consecutively numbered thereafter, up to Count I.  Starting with Count I of the TAC, which begins on
page 68, the numbering of paragraphs jumps again — this time, backward — from paragraph 336 to paragraph 71.
*See* TAC at pp. 67–68.  For clarity, citations to the TAC after paragraph 56 on page 13 will be to both the relevant
page number and the paragraph number.

shares on June 28, 2022, at a loss. *See id.* at p. 80.[9]  Mr. Xu also alleges that he "[d]ay-trad[ed]"

by investing "about $1,050,000.00" in all four Funds through TD Ameritrade, and "about

$150,000.00" in all four Funds through Interactive Brokers. *Id.*  Although Mr. Xu does not

provide specifics (*e.g.*, transaction dates, quantities of shares purchased or sold, etc.), he asserts

that he "is ready to provide all transaction statements." *See id.*

Plaintiff Szymanski alleges he purchased JNUG shares on April 25, 2017, at a "cost

basis" $594,480.97, and purchased other shares on July 4, 2017, for $1,191,813.75. *Id.* at p.

82.[10]  Mr. Szymanski appears to have incurred a loss in connection with the April 2017 purchase,

but it is unclear when or how he incurred the alleged "$568,193.77" loss.  *See id.* (listing

"purchase and sales," but indicating only "purchases" of a "quantity" of "720.0000" in the April

transaction and "1,805.0000" in the July transaction).

The TAC asserts primary liability under Section 11 of the Securities Act of 1933 (the

"Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"),

and Rule 10b-5 thereunder, as well as Sections 9(a)(2), 9(f), 18(a) and 20A of the Exchange Act.

*See* TAC ¶ 2.  Plaintiffs also assert secondary liability claims against alleged "controlling"

Defendants pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act.

*See id.*  Counts I and VI allege violations of Sections 11 and 15 the Securities Act for "material

misstatements and omissions" in the "Registration Statement and Amendments." *Id.* at pp. 68–

---

[9]     It is unclear whether Mr. Xu claims to have actually purchased shares on April 23, 2020, or whether he
merely held shares, the purchase date of which is nowhere disclosed, that were subject to a reverse split on that date.
The Court suspects the latter as elsewhere in the TAC (and in opposition to Defendants' motion to dismiss)
Plaintiffs assert that Mr. Xu held NUGT and JNUG shares on January 31, 2020, and incurred a loss "without any
trading" due to a reverse split.  *See* TAC at p. 60, ¶¶ 307–08; Pl. Opp. at 8, Dkt. 127.  Plaintiffs do not specify
whether that event was in addition to the reverse split that the Certification asserts had an impact on April 23, 2020,
or whether there was an undisclosed purchase that Plaintiffs assert was adversely affected on April 23, 2020.
Plaintiffs do not allege the number of shares that Mr. Xu held at any given time.  *See generally* TAC.

[10]    As stated *supra* n.5, July 4, 2017, was a holiday on which the U.S. exchanges would have been closed.

69, 75–76, ¶¶ 71–79, 111–14.[11]   Counts II through V and Count VII allege violations of the
Exchange Act against various combinations of Defendants.  *Id.* at pp. 70–77, ¶¶ 80–110, 115–19.
Defendants have moved to dismiss the TAC in its entirety pursuant to Federal Rule of Procedure
12(b)(6) for, *inter alia*, failure to state a claim.  *See* Def. Mot., Dkt. 118 (the "Motion").
Plaintiffs oppose the Motion.  Pl. Opp., Dkt. 127.

## DISCUSSION

### I.   Legal Standard

On a Rule 12(b)(6) motion to dismiss, the court asks "whether the complaint contains
'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"
*Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)).  "The court accepts as true all well-pleaded factual allegations in the
complaint, draws all reasonable inferences in favor of the nonmoving party, and considers, in
addition to the complaint, and written instruments attached, statements incorporated by
reference, and public disclosure documents filed with the SEC."  *Id.* (citations omitted).
Although the Court must accept as true all well-pled factual allegations in the complaint and
draw all reasonable inferences in favor of the non-moving party, the Court need not credit
conclusory allegations or allegations that are contradicted by documents incorporated in the
complaint or publicly filed with the SEC, *see Olkey v. Hyperion 1999 Term Trust, Inc*., 98 F.3d
2, 5–9 (2d Cir. 1996); *In re Optionable Sec. Litig.,* 577 F. Supp. 2d 681, 690–92 (S.D.N.Y.
2008).

---

[11]      The TAC purports to allege Section 15 liability for causing "primary violations of [S]ection 11 or 12" of
the Securities Act.  TAC at p. 76, ¶ 112.  While it is true that secondary liability under Section 15 can lie for those
who "caused the underlying primary violations of section 11 or 12," *id.*, Plaintiffs have only alleged a primary
Section 11 violation.

"To satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).[12]

## II.   Applicable Law

Plaintiffs allege violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), and violations of Sections 18(a), 10(b) and 10(b)–5, 9(a)(2) and 9(f), and 20A of the Exchange Act of 1934 (the "Exchange Act"). TAC at pp. 68–77, ¶¶ 71–119.[13]

### A.  The Securities Act of 1933

Section 11 of the Securities Act of 1933 prohibits "materially misleading statements or omissions in registration statements filed with the SEC." *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010); 15 U.S.C. § 77k(a). To determine whether a misstatement or omission is material, the Court must consider whether "[D]efendants' representations, taken together and in context, would have misled a reasonable investor." *Id.* at

---

[12]     The Court notes that Plaintiff Xu, who has entered an appearance as counsel at Xu Law Offices, P.C., initially brought this action on behalf of himself and a potential class of investors. *See* Dkt. 1; *supra* n.1. At times during the course of this litigation, Mr. Xu has, incorrectly, referred to himself as a *pro se* litigant. *See, e.g.*, Dkt. 62 (Mr. Xu's premature and improper request for a certificate of default); Dkt. 131 (Letter in Opposition to Defendants' motion to strike Plaintiffs' motion for leave to file a fourth amended complaint). As the Court has advised Mr. Xu, as a licensed attorney he is not a *pro se* litigant. *See* Hearing Tr. at 5–6, Dkt. 134. Accordingly, the TAC is not entitled to the liberal construction afforded to *pro se* litigants. *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (a lawyer representing him or herself is not entitled to the solicitude accorded a *pro se* litigant who is not a lawyer).

[13]     At times, the TAC appears to conflate Section 20(a) and Section 20A of the Exchange Act. *See* TAC at p. 75, ¶ 108 (styling Count V as an insider trading claim under § 20A but listing the ways in which "Direxion and the Individual Defendants violated § 20(a)"). Count VII more clearly asserts a secondary liability claim under § 20(a); it alleges that Count VII "is asserted against Direxion, the Individual Defendants, and all affiliated companies and is based upon Exchange Act Section 20A [15 U.S.C. § 78t(a)]." *Id.* at p. 76, ¶ 116. Accordingly, the Court construes Count V as alleging the underlying predicate liability for which Plaintiffs intend to hold the Defendants in Count VII liable as "'controlling persons' of the Trust." *Id.* at p. 77, ¶ 118.

360 (quoting *Rombach*, 355 F.3d at 172 n.7).  An omission is material if, "in light of the

information already disclosed to investors . . . there is a *substantial* likelihood that the disclosure

of the [omitted material] would have been viewed by the *reasonable* investor as having

*significantly* altered the total mix of information [already] made available."  *In re ProShares Tr.*

*Secs. Litig.,* 728 F.3d 96, 102 (2d Cir. 2013) (citations omitted, alterations and emphases in

original).  A plaintiff "need not allege scienter, reliance, or loss causation" to establish a *prima*

*facie* Section 11 claim.  *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d at 359.

Accordingly, a Section 11 claim need only satisfy the basic notice and pleading requirements

of Federal Rule of Civil Procedure 8(a)(2).  *Id.* at 358.

Section 15 of the Securities Act creates liability for individuals or entities that "control

any person liable" under Section 11.  *Id.* (alteration omitted).  Accordingly, a Section 15 claim

must be dismissed in the absence of adequately pled primary liability.  *See id.*; *Rombach*, 355

F.3d at 177–78 (claims brought under Section 15 of the Securities Act are "necessarily

predicated on a primary violation of securities law").  To state a claim under Section 15, a

plaintiff must allege "a primary violation by a controlled person, and [] control by the defendant

of the primary violator."  *In re Glob. Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319, 349

(S.D.N.Y. 2004).

### B.  The Exchange Act of 1934

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection

with the purchase or sale of any security[,] . . . any manipulative or deceptive device or

contrivance in contravention of" Commission rules and regulations.  15 U.S.C. § 78j(b).  Rule

10b–5 implements that provision of the Exchange Act and explicitly prohibits "mak[ing] any

untrue statement of a material fact."  17 C.F.R. § 240.10b–5(b).  "To state a claim under Rule

10b–5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements

or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Emps.' Ret. Sys. of Gov't of the V.I.*, 794 F.3d at 305.

Section 18 of the Exchange Act similarly proscribes misstatements but without the need to plead or prove scienter.  "To state a claim under Section 18, a plaintiff must plead that (1) the defendant 'made or caused to be made' a false or misleading statement, (2) upon which the plaintiff actually relied, (3) resulting in loss to the plaintiff." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 440 (S.D.N.Y. 2014) (cleaned up).  A plaintiff seeking recovery under Section 18 "faces a significantly lighter burden" than that of a Section 10(b) claim insofar as he "must merely plead and prove that a document filed with the [SEC] contains a material misstatement or omission.  If he can show reliance on that statement, liability is established." *Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 405 n.65 (2d Cir. 2016) (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 555–56 (2d Cir. 1979)).  Although plaintiffs need not plead fraudulent intent to make out a Section 18 claim, courts nonetheless find that the heightened pleading requirements of Rule 9(b) apply when a Section 18 "claim sounds in fraud." *Special Situations Fund*, 33 F. Supp. 3d at 401, 440–41.

To assert a claim for market manipulation under Section 9(a)(2) of the Exchange Act, a plaintiff must plead that the defendant engaged in "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter and (3) for the purpose of inducing the security's sale or purchase by others." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 78 (S.D.N.Y. 2015) (cleaned up).  Section 9(f) creates a private right of action for violations of Section 9(a). 15 U.S.C. § 78i(f).  "Section 9(f) requires that the violation of Section 9(a) be 'willful' and that the

price of the security that is purchased or sold be affected by the violation." *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 540 (S.D.N.Y. 2017) (citation omitted).

Section 20A of the Exchange Act governs liability for insider trading; it "provides a cause of action against '[a]ny person who violates any provision of [the Exchange Act] or the rules or regulations thereunder by selling a security while in possession of material, nonpublic information." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994) (quoting 15 U.S.C. § 78t–1(a)); *see also Kaplan v. S.A.C. Cap. Advisors, L.P.*, 40 F. Supp. 3d 332, 338 (S.D.N.Y. 2014). Section 20A requires plaintiffs to "plead a predicate insider trading violation of the Exchange Act" and "allege sufficient facts showing that the defendant traded the security at issue 'contemporaneously' with the plaintiff." *In re Take-Two Interactive Secs. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) (cleaned up). Section 20(a) of the Exchange Act applies secondary liability to individual executives as "controlling person[s]" of a company, based on their company's violations of the Exchange Act. *Id.* at 306 (citing 15 U.S.C. § 78t(a) and *In re Marsh & Mclennan Cos. Secs. Litig.*, 501 F. Supp.2d 452, 493 (S.D.N.Y. 2006)).

## III.   Analysis

Plaintiffs bring seven separate claims against varying combinations of Defendants. For clarity, and given the overlapping conduct required to allege many of the securities law violations at issue here,[14] the Court will evaluate the TAC based on the following categories of conduct alleged to be actionable: (1) misrepresentations regarding the risk of holding the Funds

---

[14]     The United States Supreme Court "and the [SEC] have long recognized considerable overlap among the subsections of [Rule 10b–5] and related provisions of the securities laws," such that "different portions of the securities laws 'prohibit some of the same conduct.'" *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1102 (2019) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 383 (1983)).

for longer than a day; (2) failure to disclose performance of intra-day trading; and (3) market

manipulation and insider trading.[15]

Plaintiffs allegedly lost millions of dollars investing in the Funds based on purchases that

occurred in March, April and July 2017, and April 2020.  *See* TAC at pp. 79–82.  Plaintiffs

allege that Defendants violated numerous securities laws by misleading investors into believing

that: (1) performance objectives could be achieved by investing in the Funds for periods of

longer than one day, *see id.* ¶¶ 14–16; pp. 24–27, ¶¶ 127–40; pp. 35–39, ¶¶ 190–202; and (2)

performance objectives could be achieved by investing in the Funds for less than one day, *see id.*

¶ 17; pp. 27–32, ¶¶ 141–72.  Plaintiffs further allege that Defendants controlled and manipulated

the price of the Funds to "mimic the underlying index," *id.* at pp. 33–34, ¶¶ 174–84, and that

Defendants engaged in insider trading, *id.* at 21, ¶ 110; pp. 47–49, ¶¶ 251–60.

As an initial matter, the TAC fails clearly to identify which of the Funds' disclosures or

registration statements violated the securities laws.  Although Plaintiffs allegedly incurred losses

from purchases in 2017, the TAC fails to reference any statements or disclosures made in any

SEC filings, registration statements, or other documents that pre-date 2020.  *See generally* TAC;

*see also* Def. Mem. at 4 n.2.  And, as Defendants correctly point out, the TAC "cites variously to

---

[15]     In their opposition to the motion to dismiss, Plaintiffs quarrel with those groupings of claims, which were
identified by Defendants.  Plaintiffs assert that the main theories of the Complaint are that: (1) Defendants used the
wrong "naming convention" to mislead the market; (2) "Defendants used vague risk warning [sic] combined with
contradicted and wrongful information to evade legal liabilities"; (3) Defendants hid the performance of the Funds;
(4) Defendants engaged in daily manipulation of the Funds; (5) Defendants manipulated the price of the shares by
splitting and reverse-splitting the shares; and (6) "Defendants claimed 'NAV' to pretend the Funds have investment
value."  Opp. at 15–16.  Because Defendants' categorizations and groupings map to the actual legal requirements of
the claims Plaintiffs purport to bring and to the facts (limited though they are) alleged in the TAC, the Court has
adopted their groupings of the alleged misconduct.

     The Court also notes that Plaintiffs' claim that Defendants "hid the performance of the Funds" is
nonsensical: these are publicly traded ETFs whose performance is publicly available daily.  Similarly nonsensical is
Plaintiffs' claim that splits and reverse splits, which obviously affect the per-share value of the split shares,
constitute unlawful price manipulation.

eight different SEC filings,"[16] but not once does it cite to "the most recent operative disclosure at the time of Plaintiffs' alleged investments" in 2020, which would have been the April 1, 2020 Prospectus that supplemented the Trust's February 27, 2020 Registration Statement. *See id.*; *see also* Roy Decl., Ex. 9, Dkt. 120-9.[17]

The TAC, which spans more than 300 paragraphs across 82 pages, is, to put it bluntly, nearly incomprehensible. To the extent the Court can make any sense of the TAC at all, Plaintiffs mostly assert non-specific, conclusory allegations that often parrot holdings in other cases that bear little, if any, resemblance to the circumstances here. Despite it being Plaintiffs' third bite at the apple, they have nonetheless failed to plead material misstatements or omissions of fact or other deceptive conduct, which is fatal to all seven counts alleged in the TAC. For the reasons discussed below, all of Plaintiffs' claims are dismissed.

### A. Plaintiffs Fail to Identify Any Materially False or Misleading Statements or Omissions

Plaintiffs allege that Defendants are liable for violations of Section 11 of the Securities Act (Count I) and Sections 18(a), 10(b), and 10b–5 (Counts II and III, respectively) of the Exchange Act. TAC at pp. 68–73, ¶¶ 71–99. Each Count requires Plaintiffs to allege adequately that Defendants made "materially misleading statements or omissions in registration statements filed with the SEC," *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d at 358 (Section 11 of the Securities Act); "any untrue statement of a material fact," *Abramson v. Newlink Genetics*

---

[16]    The TAC cites the February 27, 2020 Amended Registration Statement for Direxion Shares ETF Trust; the February 28, 2020 NUGT Summary Prospectus; the March 20, 2020 Prospectus Supplement for Direxion Shares ETF Trust; the March 27, 2020 Direxion Shares ETF Trust Prospectus Supplement; the April 8, 2020 Prospectus Supplement for Direxion Shares ETF Trust; the December 30, 2020 Amended Registration Statement for Direxion Shares ETF Trust; the February 25, 2021 Direxion Shares ETF Trust Amended Registration Statement; and the February 28, 2021 NUGT Summary Prospectus. *See generally* TAC.

[17]    Citations to Exhibit 9, the April 1, 2020 Prospectus, are made to the page number located at the bottom righthand corner of each page. The Court agrees with Defendants that the disclosures that post-date the April 1, 2020 Prospectus do not contain materially different information. *See* Def. Mem. at 4 n.2.

*Corp.*, 965 F.3d 165, 174 (2d Cir. 2020) (Section 10(b) and Rule 10b–5 of the Exchange Act); or

"a false or misleading statement" on which Plaintiffs "*actually* relied," *Special Situations Fund*

*III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 440 (S.D.N.Y.

2014) (Section 18(a) of the Exchange Act (emphasis in original)).  Because Plaintiffs fail to

identify any materially misleading, false, or untrue statements or omissions that any Defendant

made, Counts I through III are dismissed.[18]

> 1.  *Plaintiffs Fail to Allege Adequately that Defendants Misrepresented the Degree of Risk Associated with Long-Term Investments in the Funds*

Plaintiffs complain that Defendants violated numerous securities laws by making

"material misstatements and omissions from the Registration Statement and Amendments"

related to the JNUG and NUGT Bull Funds.  TAC at p. 69, ¶ 74.  According to Plaintiffs,

Defendants "provided fraudulent and misleading information . . . that long-term investments may

receive higher returns or at least have similar win-loss opportunities," *id.* ¶ 15, and "did not

disclose that the Fund's [sic] loss rate is significantly larger than the winning rate in the long

run," *id.* at p. 14, ¶ 79.  As the Court understands it, Plaintiffs' theory is twofold: Defendants

failed adequately to disclose the significant loss potential associated with holding the Funds long

---

[18]     Although Sections 10(b) and 18(a) of the Exchange Act trigger the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and, additionally, require reliance, Section 11 of the Securities Act does not. *See supra*, Section II.  Because the Section 11 claims in Count I do not satisfy even the basic notice and pleading requirements of Rule 8(a)(2), it is unnecessary to discuss the heightened pleading requirements of Rule 9(b).

The Court also does not address Defendants' statute of limitations argument, which very likely would be sufficient on its own to warrant dismissal of the Sections 9(a)(2), 9(f), 10(b), 18(a), 20(a), and Rule 10b-5 claims under the Exchange Act, and the Sections 11 and 15 claims under the Securities Act.  *See* 28 U.S.C. § 1658(b)(1); *Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d at 398, 402–07 (Section 1658(b)'s two-year limitations period applies to Section 9(f) and 18(a) claims); *see also Cross v. 21st Century Holding Co.*, 2002 WL 31158901, at *4–5 (S.D.N.Y. Sept. 27, 2002) (action asserting a Section 11 violation must "be brought within one year after the discovery of the untrue statement or omission, or 'after such discovery should have been made by the exercise of reasonable diligence.'" (quoting 15 U.S.C. § 77m)); *Chen v. X Fin.*, 2022 WL 765417, *10 (E.D.N.Y. Mar. 13, 2022) ("Because Section 15 claims are derivative, the one-year statute of limitations . . . applicable to Section 11 claims[] also applies to Section 15 claims.").

term; and, because long-term investment in the Funds predictably yields a "promised long-term downside trend" due to compounding, Defendants' statement that the Funds are not "sound long-term investment vehicles" is materially false because they are, in fact, "perfect long-term shorting investment vehicles." *Id.* at pp. 16–20, ¶¶ 89–105.  Even if Plaintiffs are correct that a long-term short position in the Funds would have been a good investment,[19] that does not make Defendants' statement that the Funds are not "sound long-term investment vehicles" materially false; to the contrary, it shows that Defendants specifically warned investors of the risk in investing in the Funds (i.e., having a long position) for more than one day.  The actual disclosure contradicts Plaintiffs' claim that they were misled.

As the TAC itself reveals, Defendants very clearly disclosed that the Funds were "intended to be used as short-term trading vehicles." *Id.* at pp. 28–29, ¶ 149 (quoting the February 28, 2021 Prospectus); *see also id.* at p. 30, ¶ 157 ("The return for investors that invest for periods longer or shorter than a trading day should not be expected to be 200% of the index's performance." (same)).  Plaintiffs allege that Defendants intended to mislead investors into believing that "investing for more than one day is a plausible strategy." *Id.* at pp. 13–14, ¶ 74.  But the April 1, 2020 Supplement to the February 28, 2020 Prospectus, the most proximate filing to Mr. Xu's April 23, 2020 transactions, clearly disclosed that "[t]he [NUGT] Fund does not seek to achieve its stated investment objective for a period of time different than a trading day." Ex. 9 at 39; *see id.* at 57 (same for the JNUG Fund).  Defendants disclosed the possibility "that the Fund[s] will lose money even if the Index's performance increases over a period longer than a single day." *Id.* at 39, 57.  These statements alone illustrate that Defendants warned investors of the risk of holding long positions in the Funds for a period longer than one trading day.

---

[19]     The Court presumes, but is not entirely sure, that is what Plaintiffs mean when they say investments in the Funds were "perfect long-term shorting investment vehicles."  TAC at p. 20, ¶ 105.

Moreover, Plaintiffs' contention that it was "materially false" to state that the Funds are not "sound long-term investment vehicles" is plainly belied by Plaintiffs' own claims of having lost millions of dollars after holding long-term positions in the Funds. *See* TAC at pp. 79–82; *see also* Pl. Opp. at 13 ("All plaintiffs are experienced investors but held their positions in the Funds for more than four years and lost more than one million, two million, and hundreds of dollars, respectively, in their savings and retirement funds."). Given Defendants' repeated warnings of the risk of loss associated with holding the ETFs for longer than a single trading day, it is bewildering why any reasonable investor would choose to hold their positions in the Funds for years. Defendants specifically warned that "performance for periods greater than a trading day" will "very likely [] differ" from the daily 2X objective, even "before fees and expenses," Ex. 9 at 40, especially "[d]uring periods of high volatility, [when] the Funds may not perform as expected and . . . may have losses when an investor may have expected gains if the Funds are held for a period that is different than one trading day," *id.* at 1. Defendants also warned that the "effect of compounding becomes more pronounced as Index volatility and [a shareholder's] holding period increase." *Id.* at 40, 49, 58, 67; *see also* Def. Mem. at 13.

Plaintiffs argue that these disclosures were insufficient: because "[t]he downtrend is so crucial," Defendants should have "disclose[d] that the Funds are downtrend Funds" because "no investor [would] hold a long-term position" in the face of such disclosure. Pl. Opp. at 17. But the law does not require Defendants to forecast the "precise manner in which the risks will manifest themselves." *In re ProShares Tr. Secs. Litig.*, 889 F. Supp. 2d 644, 655 (S.D.N.Y. 2012) (cleaned up), *aff'd*, 728 F.3d 96 (2d Cir. 2013). Plaintiffs opted to maintain long positions in the Funds for periods in excess of a trading day in the face of numerous warnings of the attendant risks of such a strategy. A Section 11 claim fails as a matter of law when a registration

statement "warns of the exact risk that later materialized." *In re ProShares Tr. Secs. Litig.*, 728 F.3d at 102; *see also Elite Aviation LLC v. Credit Suisse AG*, 588 F. App'x 37, 38 (2d Cir. 2014) (affirming dismissal of claims related to volatility-linked securities because the "Pricing Supplement clearly disclosed in numerous, repeated, sometimes boldfaced warnings" the risks that ultimately materialized); *Olkey*, 98 F.3d at 5  (affirming dismissal where the "prospectuses warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed").

Likewise, Plaintiffs' Sections 10(b), Rule 10b–5, and 18(a) claims fail.  Defendants' disclosures, when viewed in their entirety, reveal that Defendants did not materially misrepresent the risk associated with long-term positions in the Funds — to the contrary, Defendants affirmatively and fully disclosed it.  Defendants' disclosures repeatedly warned of the numerous variables that could cause the Funds' actual yield to "differ" from the Funds' target, and even offered demonstrative tables and illustrations reflecting the "potential impact of compounding on cumulative return over time."  *See* Def. Mem. at 13–14 (citing Ex. 9 at 40–41, 49–50, 59, 68, and 100–01).  Defendants even qualified their hypothetical table by stating that the Funds' "actual returns may be significantly better or worse than the returns shown" in the table.  *See, e.g.*, Ex. 9 at 41.  In short, Defendants' statements could not plausibly have misled any reasonable investor into believing that there would be no downside risk to investing in the Funds for periods of longer than one day.  A "higher risky return is precisely what some investors are seeking."  TAC at p. 14, ¶ 75.  It appears that Plaintiffs got what they bargained for: they risked big, and they lost big, notwithstanding Defendants' repeated warnings that "[t]he Funds are not suitable for all

investors" and are only "appropriate for[] investors who . . . actively monitor and manage their portfolios."  Ex. 9 at 1.[20]

> ### 2. Plaintiffs Fail to Allege Adequately that Defendants Misrepresented the Risk of Intra-Day Trading

Plaintiffs also appear to allege that Defendants failed to disclose fully the risks of holding the shares of the Funds for periods shorter than one day.  *See* TAC at pp. 31–33, ¶¶ 167–73.  By denominating the relevant funds as "daily,"[21] Plaintiffs allege that Defendants "misrepresented that the Funds are seeking daily leveraged return" even though "the Funds' price cannot be leveraged during the trading day period other than the pinpointed closing time, when Direxion rebalances and readjusts its position."  *Id.* ¶ 17.  These claims fail for the same reasons described above.  As the TAC acknowledges, Defendants fully disclosed that investors should not expect the Funds' investment objective to materialize when trading for periods other than one day.  *Id.* at p. 30, ¶¶ 156–57 (citing the February 28, 2020, and February 28, 2021 Prospectuses in which Defendants stated, respectively, that "[t]he return for investors that invest for periods less than a trading day <u>will not be 300%</u> of the index's performance for the trading day,"[22] and "[t]he return for investors that invest for periods **<u>longer or shorter</u>** than a trading day should <u>not be expected to be 200%</u> of the index's performance") (emphases in original).

---

[20]   Even if Plaintiffs had plausibly alleged facts from which the Court could reasonably infer Defendants had misstated or omitted a material fact, Plaintiffs' Sections 10(b) and 18(a) claims fail for the additional reason that Plaintiffs fail to allege which statement or statements they relied on when they decided to invest in the Funds.  *See* Def. Mem. at 21 n.10; *Special Situations Fund*, 33 F. Supp. 3d at 426, 440.

[21]   In their opposition to the motion to dismiss, Plaintiffs assert that one of the main theories of the Complaint is that including the word "daily" in the name of the funds "attract[ed] and cheat[ed] market and government."  Opp. at 15; *supra* n. 15.

[22]   Prior to 2020, the Funds sought a 3X (or -3X) multiplier.  *See* TAC at p. 14, ¶ 76; *see also* Def. Mem. at 6 n.5.

Plaintiffs assert that Defendants' disclosure statements are "vague" and "contradict[ed] by] language in the same document." *Id.* at p. 30, ¶ 158.  But Plaintiffs fail to point to any contradictory language whatsoever.  In fact, both the February 28, 2020 and February 28, 2021 NUGT Prospectuses state in bold font, "The Fund does not seek to achieve its stated investment objective for a period of time different than a trading day."  *See* Ex. 2 at 2, Dkt. 120-2; *see also* Ex. 8 at 2, Dkt. 120-8 (same).  The April 1, 2020 Prospectus repeated the same message, including numerous warnings about the potential of share-price and net-asset-value volatility throughout a single trading day.  *See* Ex. 9 at 42–43 (describing the NUGT Fund's "Intra-Day Investment Risk" and cautioning that "an investor that purchases shares intra-day may experience performance that is greater than, or less than, the Fund's stated multiple of the Index"); *see also id.* at 43 (describing the NUGT Fund's "Daily Index Correlation/Tracking Risk" in which Defendants cautioned that "the Fund's return may vary from a multiple of the performance of the Index because different markets may close before the NYSE Arca, Inc. opens," and that "due to differences in trading hours" and the fact that "the Index may be calculated using prices obtained at times other than the Fund's net asset value calculation time, the Fund's performance may not correlate the Index"); *id.* at 52, 61, and 70 (same for the DUST, JNUG, and JDST Funds, respectively).

Plaintiffs also claim that, although Defendants warned about index volatility, Defendants failed to "explain that the intra-day price's leveraged volatility compounded."  TAC at pp. 31–32, ¶¶ 167–68.  But, as described above, Defendants did warn of the impact of compounding, *see, e.g.*, Ex. 9 at 40 (describing the variables that could cause the Funds' actual yield to "differ" from the Funds' target and the potential "impact of compounding" on cumulative return over time), and additionally warned that, due to market volatility, "the Fund may have difficulty

achieving its investment objective for one or more trading days, which may adversely impact the

Fund's returns on those days and periods inclusive of those days," *id.* at 41.  Defendants also

described other factors that could have an impact on the Funds' ability to achieve their daily

objectives, including "fees, expenses, transaction costs, financing costs related to the use of

derivatives, income items, valuation methodology, accounting standards and disruptions or

illiquidity in the markets for the securities or derivatives held by the Fund."  *Id.* at 43; *see also id.*

at 52, 61, and 70 (same for the DUST, JNUG, and JDST Funds, respectively).  Plaintiffs have

not alleged that any of these assertions were untrue or misleading with respect to the risks of

intra-day trading in the Funds.

In sum, Plaintiffs have failed to allege adequately that Defendants failed to disclose or

misrepresented the risk of loss with respect to long-term or intra-day investments in the Funds;

therefore, Counts I, II, and III are dismissed.[23]

### B. Plaintiffs Fail to Allege Adequately that Defendants Engaged in Market Manipulation or Insider Trading

Plaintiffs also allege market manipulation claims under § 10(b) and Rule 10b–5 (Count

III), §§ 9(a)(2) and 9(f) (Count IV), and § 20A (Count V) of the Exchange Act.  TAC at pp. 71–

75, ¶¶ 86–110.  In support of these claims, Plaintiffs allege that Defendants "manipulate[] the

intraday prices to mimic the underly [sic] [indices'] trend" without investors' knowledge, and

---

[23]     The TAC also alleges sporadically that Defendants failed to disclose daily (rather than annual) operating costs and misrepresented the Funds' portfolios by naming them "gold ETFs" when the Funds disclose that they will invest "as little as 25% of their total asset in the gold mining sector index."  *See* TAC at pp. 23–24, ¶¶ 124–25; pp. 40–41, ¶¶ 205–14.  But Plaintiffs fail to allege how any of this information would be material to any reasonable investor.  Nor have Plaintiffs have explained why Defendants were required to disclose daily operating costs (as opposed to annual).  And, given the TAC's admission that both the annual expenses and the mix of assets in the Funds' portfolio are included in the publicly available disclosures, it is unclear how Plaintiffs claim any securities law was violated (let alone which one).  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38 (2d Cir. 2017) ("The materiality of an omission must be assessed in light of the total mix of information in the public domain."); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Secs. Litig.*, 272 F. Supp. 2d 243, 249–50 (S.D.N.Y. 2003) (stating that Section 11 does "not require the disclosure of publicly available information").

that the Trust "controls the closing prices to deviate from the leveraged return" and "manipulates the rebalance and readjustment of the closing price to make short-swing trade profits."  TAC ¶ 19.  Plaintiffs' allegations are conclusory and speculative and lack a sufficient factual basis to survive a motion to dismiss.

To allege a § 10(b) and Rule 10b–5 violation under a market manipulation theory, Plaintiffs must first allege conduct that "involve[s] misrepresentation or nondisclosure."  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011).  As discussed above, the TAC falls well short of this hurdle.  Nowhere does the TAC cite to any material misrepresentations or omissions in any disclosure.

Even if it did, the TAC lacks any conceivable, factual basis for the allegation that Defendants manipulated the price of the Funds' shares: rank speculation simply will not do.  *See* TAC at p. 62, ¶ 311 (alleging that Defendants "must have known how to control the price to adjust smoothly to the leveraged closing price"); p. 53, ¶¶ 273–78 (alleging that price fluctuations in shares in the NUGT Fund "showed the defendants' collection campaign" and that the "only explanation" for "the divergence of the performance of the Fund from that of the benchmark or Index" was "price manipulation").  Because the TAC alleges no facts from which the Court could plausibly infer that Defendants engaged in unlawful price manipulation, these claims must be dismissed.  *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 421–22 (S.D.N.Y. 2010) (finding insufficient allegations that defendants "profited from naked short selling" without identifying "any supposedly manipulative naked short sale" by any defendant).

Plaintiffs' Sections 9(a)(2), 9(f), and 20(A) claims must be dismissed for the same reason. Plaintiffs allege no facts that even remotely suggest that Defendants engaged in "a series of transactions in a security" that had the effect of "raising or depressing the price of that security"

so as to "induc[e] the security's sale or purchase by others," *Sharette*, 127 F. Supp. at 78, let alone that Defendants did so "willfully," *I.B. Trading, Inc.*, 280 F. Supp. 3d at 540 (violations of Section 9(a) must be "willful" for there to be a private right of action under Section 9(f)); *see also* 15 U.S.C. § 78i(f). Nor have Plaintiffs alleged facts necessary to maintain a Section 20A claim; in addition to a plausibly-pled predicate securities violation, the complaint must allege facts that would allow the Court plausibly to infer that Defendants traded the security at issue "contemporaneously" with Plaintiffs. *See* 15 U.S.C. § 78t–1(a); *In re Take-Two Interactive Secs. Litig.*, 551 F. Supp. 2d at 309. As Defendants point out, the TAC is bereft of a single allegation that any Defendant ever purchased or sold shares of the Funds, let alone that they traded contemporaneously with Plaintiffs or did so on the basis of non-public information. *See generally* TAC; Def. Mem. at 23.

In short, the remainder of Count III is dismissed, along with Counts IV and V.

### C. Plaintiffs Fail to Allege Adequately a Secondary Liability Violation Against Any Individual Defendant

Plaintiffs also allege liability under § 15 of the Securities Act (Count VI) against the Individual Controlling Defendants, Individual Managerial Defendants, and Rafferty LLC; as well as liability under § 20(a) of the Exchange Act (Count VII) against the Individual Controlling Defendants, Individual Managerial Defendants, and "Portfolio Managers." TAC at pp. 75–77, ¶¶ 111–19. Sections 15 and 20(a) impose secondary liability on individual executives as "control person[s]" of a company that violates the Securities or Exchange Act, respectively; claims for both necessarily fail in the absence of any adequately alleged primary liability. *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d at 358; *Rombach*, 355 F.3d at 177–78 (claims brought under Section 15 of the Securities Act and Section 20(a) of the Exchange Act are "necessarily predicated on a primary violation of securities law"); 15 U.S.C. §§ 77*o*(a), 78t(a).

Because Plaintiffs fail to allege any primary securities law violation by any Defendant in this case, Plaintiffs' claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to all claims.[24]  The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE this case.

**SO ORDERED.**

Date:  **August 25, 2023**          _____
       **New York, New York**            **VALERIE CAPRONI**
                                    **United States District Judge**

---

[24]     The Court has previously denied Plaintiffs' motion to file a Fourth Amended Complaint ("FAC").  *See* Dkt. 133.  Plaintiffs filed the TAC after having seen Defendants' motion to dismiss the Second Amended Complaint. Dkt. 107.  That motion and the memorandum in support clearly put Plaintiffs on notice of what was required to state a claim.  The TAC cured none of the shortcomings.

In response to the motion to dismiss the TAC, Plaintiffs asserted that the FAC would cure the deficiencies identified by Defendants.  The Court has reviewed the proposed FAC.  It does the following things: it removes Mr. Xu as a plaintiff and adds several other plaintiffs; it adds allegations that would be necessary for the case to proceed as a class action; it corrects a chart that appears at p. 39, ¶ 200 of the TAC, and it cleans up the certification relative to the loss Mr. Szymanski allegedly experienced from his July 4, 2017 purchase of JNUG.  What it does not do is add any facts necessary to state a claim.

Because the FAC would still be inadequate, granting leave to amend the complaint again would be futile. Accordingly, the Court has *sua sponte* reconsidered its prior decision to deny leave to amend the complaint and adheres to it.

23